IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MAQSOOD MALIK,

             Plaintiff,                                  05cv0085

    v.                                          **Electronically Filed**

QUEST DIAGNOSTICS, INC.,
and ALBERT MURRER III,

             Defendants.

## MEMORANDUM OPINION

January 6, 2006

### I.      Introduction.

Before the Court is defendants' motion for summary judgment on plaintiff's civil rights claim of discrimination in contractual relations claim pursuant to 42 U.S.C. § 1981 (Count I), and Pennsylvania common law claim of interference with contractual relations (Count II).  After careful consideration of the motion for summary judgment and response thereto, memoranda in support and in opposition to summary judgment, and the supporting materials produced in support and in opposition, the Court will deny summary judgment as to plaintiff's section 1981 claim, but will grant the motion for summary judgment as to Count II, the common law claim of tortious interference with contractual relations against the individual defendant only.

### II.      Summary Judgment Standards.

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of*

*Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted).  In deciding a summary judgment motion, the court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639,

643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party).

### III.     Count I - 42 U.S.C. Section 1981

Count I of plaintiff's complaint alleges racial discrimination pursuant to 42 U.S.C. § 1981.  Section 1981 gives "all persons within the jurisdiction of the United States"  the same right "to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. The Civil Rights Act of 1991 amended section 1981(b) to include the termination of contracts. See Civil Rights Act of 1866, c. 31 , 14 Stat. 27  (codified as amended at Pub.L. 102-166, Title I, § 101 (1991), 105 Stat. 1071 ) (adding "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship" ). Section 1981, as amended, thus prohibits termination of an employee contract for reasons of racial discrimination.

As the United States Court of Appeals for the Third Circuit stated in *Pamintuan v. Nanticoke Mem. Hosp.*, 192 F.3d 378 (3d Cir. 1999), race discrimination claims under section 1981 are analyzed at the summary judgment stage with reference to the familiar *McDonnell Douglas* evidentiary burden framework:

Section 1981 prohibits "racial" discrimination in the making of private and public contracts. *See St. Francis College v. Al-Khazraji*, 481 U.S. 604, 609, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). We analyze section 1981 claims under the familiar *McDonnell Douglas* shifting burden framework used in Title VII discrimination cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 432 (3d Cir. 1997).

*Pamintuan*, 192 F.3d at 385.

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *Stewart*, 120 F.3d at 432. Plaintiff establishes the prima facie case by showing that he (1) is a member of the protected class, (2) is qualified for the position, (3) suffered an adverse employment decision (here, termination), and (4) that an otherwise similarly situated person outside of the protected class received more favorable treatment. *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999); *Simpson v. Kay Jewelers*, 142 F.2d 639, 644 n.5 (3d Cir. 1998) (e.g., in an ADEA case of demotion or discharge, that the plaintiff was replaced by a sufficiently younger person to create an inference of age discrimination); *Ezold v. Wolf, Block, Schorr and Solis Cohen,* 983 F.2d 509, 522 (3d Cir. 1993).

A plaintiff's prima facie case under the *McDonnell Douglas* "pretext framework is not intended to be onerous." *Sempier v. Johnson & Higgins*, 45 F.3d 723, 728 (3d Cir. 1995) (citation omitted). Proving a prima facie case raises an inference of discrimination because the courts presume that these acts, if otherwise unexplained, are "more likely than not based on the consideration of impermissible factors." *Id.* (citation omitted). Moreover, the nature of the required showing to establish a prima facie case of disparate treatment by indirect evidence "depends on the circumstances of the case." *Torre v. Casio, Inc.*, 42 F.3d 825, 830 (3d Cir.

4

1994) (citations omitted).  And, the standards for establishing a prima facie case are not to be applied inflexibly or rigidly, but provide a useful framework for analysis which "must be relaxed in certain circumstances, as when there is a reduction in force."  *Id., citing Billett v. CIGNA Corp.*, 940 F.2d 812, at 816 n. 3 (3d Cir. 1991).

In *Shaner*, the United States Court of Appeals for the Third Circuit elaborated upon the shifting burdens of evidence production and of persuasion under *McDonnell Douglas*, explaining that, should the employer carry its intermediate burden to articulate some legitimate, nondiscriminatory reason for the employee's rejection, the plaintiff must then

> have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. . . .  While the burden of production may shift, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." . . . Our experience is that *most cases turn on the third stage*, i.e., can the plaintiff establish pretext. . . .
>
> .  .  .
>
> At this point, the court focuses on whether there is sufficient evidence from which a jury could conclude that the purported reasons for defendant's adverse employment actions were in actuality a pretext for intentional race [or disability] discrimination. . . . The factfinder's rejection of the employer's proffered reason allows, but does not compel, judgment for the plaintiff. *Sheridan [v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1066-67 (3d Cir. 1996) (*en banc*) ].
>
> On numerous occasions, we have explained the plaintiff's burden at summary judgment on this aspect of the *McDonnell Douglas* tripartite framework. Specifically, in *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994), and later in *Sheridan*, we stated that a plaintiff may defeat a motion for summary judgment (or judgment as a matter of law) by pointing "to some evidence, direct or circumstantial, from which a factfinder would reasonably either:  (1) disbelieve the

5

employer's articulated legitimate reasons;  or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action'."  *Fuentes*, 32 F.3d at 764;  *Sheridan*, 100 F.3d at 1067.

"To discredit the employer's proffered reason, . . . plaintiff cannot simply show that the employer's decision was wrong or mistaken. . . [but rather] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (citation and internal quotation marks omitted).

204 F.3d 500-01 (certain citations omitted; emphasis added).  *See also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148-49 (2000) (resolving split amongst various Circuit Courts of Appeals, and holding, as did the United States Court of Appeals for the Third Circuit, that: "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law. . . . [B]ecause a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination.").  *See also Narin v. Lower Merion School Dist.*, 206 F.3d 323, 332 (3d Cir. 2000) (although *Fuentes* held that "plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action,"

6

nevertheless, it is "not necessary for a plaintiff to 'cast doubt on each proffered reason in a vacuum' . . . . Rather, '[i]f the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder.' *Id.*" ).

**Application.**

Plaintiff Maqsood Malik easily establishes a prima facie case of discrimination, and defendant does not argue otherwise.  Mr. Malik is a member of a protected class (non-white Pakistani), his experience establishes that he is highly qualified for the pilot position with defendant Quest Diagnostics, Inc., that he was terminated, and that similarly situated white pilots were not similarly treated.

Defendants vigorously argue, however, that there was a compelling business reason to terminate plaintiff. Defendants claim plaintiff was terminated because he violated Federal Aviation Administration flight rules when he flew his plane into and above a winter storm over the Rocky Mountains on a flight to Las Vegas on February 2, 2003.  Although this flight had a happy ending, with no human injuries or property damage, defendants state that plaintiff's FAA violations and poor judgment endangered Quest's plane and plaintiff's and his co-pilot's safety. Plaintiff's supervisor, defendant Albert Murrer, immediately chastised plaintiff after the flight, and there is little doubt that this was the specific event that triggered termination.  Plaintiff argues he should not have been terminated because he was following company policy and he disputes defendants' views about the seriousness of the FAA violations or that he did anything improper on that flight.  However, for summary judgment purposes, defendants have easily met their burden of offering legitimate business reasons for the termination, and so this case, like

most employment discrimination cases, turns on the third step - whether plaintiff can show
pretext.

Plaintiff points to a pattern of discriminatory treatment and hints of racial hostility by
supervisor Murrer, not as separate discrimination claims but as evidence he was terminated
because of his race.  The Court need not list and discuss those specific instances however (and
reserves consideration of the admissibility of such historical instances of alleged discrimination
and hostility until motions in limine, if any, have been filed and briefed) because plaintiff has
also offered compelling evidence that a similarly situated white pilot violated FAA rules some
ten months after he was terminated, which resulted in a plane crash and $1.2 million damage, and
that this pilot was neither terminated nor suspended.

On December 6, 2003, Andy Alvine, a white pilot for Quest, failed to properly de-ice the
wings of his plane, which crashed shortly after he took off from the Reading, Pennsylvania
airport.  Plaintiff claims that Mr. Alvine violated FAA rules when he took off; defendant denies
that and points to the results of the FAA investigation which "cleared" Alvine to return to flight
status.  Plaintiff in turn disputes that Mr. Alvine was "cleared" of wrongdoing.  There is no
dispute, however, that the National Transportation Safety Board found pilot error was the
probable cause of the plane crash, although defendants discount the reliability of that finding and
assert that the FAA investigation was much more thorough and reliable than that of the NTSB.
Mr. Alvine was neither suspended nor terminated.

A reasonable fact finder could conclude that plaintiff's actions and judgment in piloting
Quest's plane on February 3, 2003, which resulted in no injury or damages, were significantly
less blameworthy than Alvine's actions and judgment on December 6, 2003, which resulted in

8

$1.2 million damage to Quest's airplane. A reasonable fact finder could infer therefrom that defendants' stated reason for terminating plaintiff is pretext. There is a genuine issue of material fact as to whether defendants' proffered reason for plaintiff's termination is pretext; plaintiff's prima facie case and sufficient evidence to reject defendants' explanation permits (but does not compel) a jury to find he was terminated because of racial discrimination. Accordingly, summary judgment must be denied as to Count I.

### IV.   Count II - Intentional Interference With Contractual Relations.

Defendants argue that plaintiff's common law claim that Murrer intentionally interfered with his contractual relations with Quest must fail as a matter of law because an agent of the employer acting within the scope of his employment cannot be said to have interfered with plaintiff's contract with that employer. Plaintiff does not respond to this argument, and the Court agrees with defendants.

The tort of inducing breach of contract or refusal to deal is defined as inducing or otherwise causing *a third party* not to perform a contract with another, or not to enter into or continue a business relation with another, without a privilege to do so. Restatement (Second) of Torts § 766. ("One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."). "Every case in Pennsylvania granting recovery for this tort has involved a defendant's interference with known contracts or business relations existing between third parties and a plaintiff." *Glazer v. Chandler*, 414 Pa. 304, 200 A. 2d 416 (1964) (collecting cases).

9

A corporation is a creature of legal fiction which can act only through its officers, directors and other agents. *Lokay v. Lehigh Valley Cooperative Farmers Inc.*, 342 Pa. Super. 89, 97, 492 A.2d 405, 408 (1985).  Because a corporation can act only through its agents, where the defendant is acting as an agent of the corporation within the scope of his employment, there is no third party against whom an action for intentional interference with a contractual relationship can lie.  *Curran v. Children's Service Ctr. of Wyoming County, Inc.*, 396 Pa.Super. 29, 578 A.2d 8, 12 (Pa.Super. 1990), *citing, inter alia, Daniel Adams Assoc. v. Rimbach Pub. Co.*, 360 Pa.Super. 72, 519 A.2d 997, *alloc. denied*, 517 Pa. 599, 535 A.2d 1057 (1987).  "It is well-established that managerial employees acting within the scope of their employment are not third persons for purposes of satisfying the elements required to maintain an action for interference with contractual relations." *Adams v. USAir Inc.*, 438 Pa. Super. 190, 193, 652 A.2d 329, 330 (1994). *See also Maier v. Maretti,* 448 Pa.Super. 276, 671 A.2d 701 (1995) (essential to recovery for tortious interference with contract is the existence of three parties - a tortfeasor who intentionally interferes with a contract between the plaintiff and a third person; therefore there must be a contractual relationship between plaintiff and a party other than defendant; collecting cases).

There is no dispute that defendant Murrer was acting at all relevant times as an agent for and within the scope of his employment with Quest.  Accordingly, summary judgment must be granted as to Count II of the complaint.

10

For all of the foregoing reasons, the Court will issue an order denying in part and granting in part defendants' motion for summary judgment.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All counsel of record as listed below

Jon Pushinsky, Esquire
1808 Law & Finance Building
Pittsburgh, PA 15219

James A. Ashton, Esquire
500 Lewis Run Road
Suite 227
Pittsburgh, PA 15122

Patrick W. Ritchey, Esquire
Reed Smith
435 Sixth Avenue
Pittsburgh, PA 15219-1886